## COOK v. ROCHFORD.

### No. 11,134; August 23, 1886.

12 Pac. 568.

**Sale—Delivery—Attaching Creditors.—In an Action Against a Sheriff** for the recovery of property attached by him as that of one C., where it is claimed that C. sold the property to plaintiff before the attachment, testimony of plaintiff and C. to the effect that on a day named prior to the attachment C. sold the property to plaintiff, taking his promissory note in payment, and gave him a bill of sale of the property, viz., saloon furniture and stock; that C. delivered to plaintiff the keys of the safe and the saloon, took his account-book, and left, and has had nothing to do with the business since, and that plaintiff has continued to own the property, and carry on the business, up to the time of the levy of the attachment; that there was but one advertisement in any paper authorized by C., and that was changed on the day of the sale by the insertion of plaintiff's name in the place of that of C.; that the advertisements that appeared in various other papers were not changed; that the sale was made in good faith; that the plaintiff was C.'s bar-tender at the time of the sale, and the business was conducted after the transfer just as it had been before, plaintiff continuing to tend bar; held, insufficient evidence of an immediate delivery and continued change of possession of the property in controversy.

APPEAL from Superior Court, Modoc County.
Replevin.

The complaint in this action alleges that the defendant is sheriff of Modoc county, California; that on the 1st of July, 1884, at Alturas, Modoc county, California, plaintiff was the owner and in the exclusive possession of certain saloon furniture, fixtures, and stock set out in the complaint; that the value of such goods was eleven hundred and nine dollars and seventy-five cents; that the defendant, as such sheriff, on the 1st of July, 1884, without the consent of plaintiff, took such goods from the plaintiff's possession; that before the commencement of this action, on July 2, 1884, plaintiff demanded of defendant possession and return to him of such goods, which defendant refused, and still refuses, to do. Defendant's answer denies that plaintiff was the owner or in

possession of the property; denies any damage to plaintiff; alleges that he, as sheriff of Modoc county, on July 1, 1884, levied upon and attached the property described in the complaint under process of court issued in the case of Sykes & Co. against Whiting & Culver; that the goods were the property of J. B. Culver, of the firm of Whiting & Culver; that any claim of title of plaintiff thereto, based upon any contract with said Culver, is fraudulent and void. There was a verdict and judgment for plaintiff. Motion for new trial by defendant denied by the court. Defendant appeals from the judgment, and from the order denying the motion for a new trial.

The testimony offered on behalf of plaintiff and defendant, respectively, is as follows:

W. D. Cook, having been duly sworn, testified as follows:

"I am the plaintiff. I am an unmarried man. I am twenty-four years of age. Have resided in the town of Alturas, in this county, for the past eighteen months. I had been laboring as a bar-keeper in the Branch saloon, in this town, during my residence here, up to about the twentieth day of November, 1883. Shortly after this I began laboring for John B. Culver, as bar-keeper in the Delta saloon, in this town, and continued so to labor for him until the twenty-sixth day of June, 1884, when I purchased of Culver all the property described in the complaint, and then took of him a written bill of sale therefor. Culver first proposed a sale to me of the property about the 1st of June, when I took the matter under advisement, and on the day we traded I approached him, and asked him if he was still willing to sell upon the terms he had offered. He answered that he was, and we closed the trade. No one was present at the sale other than Culver and myself. It was made at the saloon. The articles or property was not inventoried, nor in anywise examined or listed; but a lumping was made. I knew what there was in the saloon. Culver, a few hours after the sale, gave me a bill of sale, then took his account-books, and left. The purchase price was eleven hundred and eighty-three dollars. I had no property nor money whatever at the time I made the purchase. I bought the property on credit. I gave my individual, unsecured promissory notes to Culver for the purchase

money in part, and assumed, as between Culver and myself, only the payment of certain debts of Culver for the balance. I knew at the time of making the purchase that Culver was indebted to some parties in San Francisco for some of the stock on hand, but did not then know that he was indebted to E. Sykes & Co.

"As I have said, I assumed the payment of certain debts of Culver in San Francisco. I did not, in writing or otherwise, agree with Culver's creditors to pay these debts, but merely so contracted with Culver. Since this action was begun I have paid those debts so assumed, and also paid about all I owe Culver on the promissory notes. I made the purchase in good faith. I could make no money keeping bar, and I thought I could do no worse running the saloon on my own responsibility, was the reason I made the purchase. I did not know at the time I made the purchase that F. W. Ewing, attorney for E. Sikes & Co., was then endeavoring to collect their claim against Culver. Culver said nothing to me about it. The defendant, as sheriff, on the first day of July, 1884, levied upon and attached all of the property described in my complaint, and then took the same into his official custody, and so kept and detained the same continuously until the twenty-first day of that month. His taking was by virtue of a writ of attachment in the action then pending in the superior court of this county in favor of E. Sikes & Co. and against John B. Culver. At the time of the sale, nor at any other time thereafter, until attached, was anything done with reference to the property in controversy that would evidence to a person that there had been a change of ownership or possession thereof. The bar fixtures, and everything in the saloon, remained just the same, and I continued to tend the bar just the same as I had while laboring for Culver. On the same day that I purchased the property I went to the office of the 'Northern Picket,' a weekly newspaper published in town, and ordered Culver's name removed and my own inserted in the advertisement as the proprietor of the Delta saloon, which was done, and have had the advertisement in that paper ever since. Culver did not stop there after the sale, but would come around, and be in the saloon; but he and I were in the saloon, sitting there, when the defendant came in to make the attachment. Culver then

told the sheriff that he had sold out to me, but I did not say anything about it. I did not then, nor have I ever, shown him my bill of sale. I assisted the sheriff in making the inventory of the property. I did not make any demand upon the sheriff for the return of the property until the next day. The property in controversy was, at all times alleged, worth eleven hundred and nine dollars and seventy-five cents. I have been damaged one hundred dollars by defendant's keeping the said property from the time it was attached until the 21st of July, 1884. After I had made the purchase, and immediately thereafter, Culver gave me possession by handing me the keys of the door and safe, and, with a wave of his hand, said, 'There is the property,' or words of similar import. Culver then took his account-book and left, and has never had anything to do with it since, and from that time has had no interest in it, one way or another.''

John B. Culver, sworn on behalf of plaintiff, testified as follows: ''When I made a sale of the property in controversy to plaintiff I was indebted to E. Sikes & Co., of San Francisco, to the amount of three hundred and fifty dollars. I never have paid their claim, but I expect to as soon as I get able. I made the sale to Cook in good faith, and without any intention of defrauding E. Sikes & Co. The saloon building, and which I had rented, has been long known as the 'Delta Saloon,' and so advertised in various local newspapers, with myself as proprietor. There was but one of these advertisements, to wit, the one in the 'Northern Picket,' that was authorized by me. This advertisement was discontinued by me on the day of the sale. I have done nothing with reference to the other advertisements. At the time of the sale, nor at any time subsequently that I know of, was anything done to evidence the change of the possession of the property, other than that I took my accounts, and·left the saloon, and gave plaintiff the keys thereto. When the sheriff made the attachment I told him the property belonged to Cook; that I had sold it to him five days before; and afterward Mr. Cook told him the same.''

C. C. Rochford, being sworn, testified as follows: ''I am the defendant herein. I attached the property in controversy in the Delta saloon, in this town, on the first day of July, 1884. The plaintiff and John B. Culver were both in

the saloon when I went into it and when I did make the attachment. I had been well acquainted with Culver and Cook when Culver was proprietor of the saloon and Cook his bartender; had been in the saloon very frequently during that time. When I made the attachment of the property in controversy I did not see or know anything that evidenced a change of possession or ownership thereof, excepting only that Culver told me, while making the levy, that he had sold to Cook. Cook did not say a word about it, but assisted me in making the levy. He did not claim the property until the next day. I placed a keeper in possession of the saloon, and, at plaintiff's request, conducted the business, selling for cash only; all receipts of which were turned over to plaintiff on July 21, 1884, when he gave a bond for the return of the property. After plaintiff demanded a return of the property, E. Sikes & Co. indemnified me by their attorney giving me his word that I should be saved from all expense for damages in the premises if I would hold the property, but no writing of indemnity was given me, nor have I any now."

J. S. Whiting was duly sworn on behalf of the defendant, whereupon defendant offered to prove by this witness that E. Sikes & Co., by their attorney, had presented and were pressing Culver for the payment of their claim on the day before the sale from Culver to Cook, and that Culver replied, asking for an extension of time for a few days, that he might hear from E. Sikes & Co.; to which plaintiff objected on the ground that such testimony would be incompetent, irrelevant, and immaterial. The court sustained the objection, and the defendant excepted.

J. J. May for plaintiff and respondent; Ewing & Claflin for defendant and appellant.

By the COURT.—The court below should have granted a new trial. The evidence was insufficient to show that there was an immediate delivery and continued change of possession of the property in controversy.

Judgment and order reversed and cause remanded for a new trial.